UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDULLAH MUHAMMAD,
MUHSIN MUHAMMAD, and
MUHAMMAD DEVELOPMENT
GROUP, INC.,

      Plaintiffs,

                                 Case No. 04-CV-73899

v.

                                 HONORABLE DENISE PAGE HOOD

DARRIN C. EATON, et. al.,

      Defendants.
_____/

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTIONS TO DISMISS**
**AND DISMISSING CASE**

**I.    BACKGROUND**

This matter is before the Court on several motions for summary judgment. Plaintiffs, Abdullah Muhammad, Muhsin Muhammad and Muhammad Development Group, Inc., filed a Complaint on October 4, 2004 against Defendants Darrin C. Eaton, Anthony L. Jerdine, 1235 White Cort, L.L.C., Cleveland Venture Properties, L.L.C., Oracle Capital Holdings, Inc., Mandolin Properties and Development, L.L.C., Mandolin Investments, L.L.C., Mandolin Construction, L.L.C., Clark M. Chasten II, Smith Barney, Inc.[1], Bruce H. Illes, Wolfe & Turner Investments, and Sherwin and Noble. A Clerk's Entry of Default was entered as to Defendants Sherwin and Noble, Mandolin Properties and Development, L.L.C., Mandolin Construction, L.L.C., Anthony L. Jerdine, Clark M.

---

[1]"Smith Barney, Inc." is not Defendant's proper name. The proper name is "Smith Barney."

Chasten II, Mandolin Investments, L.L.C., and 1235 White Cort, L.L.C., on November 18, 2004. On November 22, 2004, Defendant Smith Barney filed a Motion to Dismiss under Fed.R.Civ.P. 9(b) and 12(b)(6) . Defendant Illes filed a Motion for Summary Judgment and Concurrence/Response to Smith Barney's Motion for Summary Judgment on December 13, 2004. Defendants Eaton and Oracle Holdings, Inc. filed a Motion/Concurrence for Summary Judgment under Fed.R.Civ.P. 9(b) and 12(b)(6) and Response to Smith Barney and Bruce Illes Motions for Summary Judgment on January 3, 2005. Defendant Oracle Capital Holdings, Inc. filed a Motion/Concurrence for Summary Judgment Under Fed.R.Civ.P. 9(b) and 12(b)(6) and Response to Smith Barney and Bruce Illes Motions for Summary Judgment on January 3, 2005.

Plaintiffs filed a Response to Defendant Smith Barney's Motion to Dismiss on February 9, 2005. Plaintiffs filed a Response to Defendant/Cross Defendant Bruce Illes' Motion for Summary Judgment and Concurrence/Response to Smith Barney's Motion for Summary on February 9, 2005. Also, on February 9, 2005, Plaintiffs filed a Response of Plaintiffs to Defendants Eaton and Oracle Capital Holdings, Inc.'s Motion/Concurrence for Summary Judgment [To Dismiss] Under Fed.R.Civ.P. 9(b) and 12(b)(6). The Plaintiffs also filed a Response of Plaintiffs to Defendant Oracle Capital Holdings, Inc.'s Motion To Dismiss Pursuant to Fed.R.Civ.P. 12(c).

Defendant Illes filed a Reply to Plaintiffs' Response to Motion for Summary Judgment on February 15, 2005. On February 16, 2005, Defendants Eaton and Oracle Capital Holdings, Inc. filed a Reply and Brief to Response of Plaintiffs to Motion of Defendants Eaton and Oracle Capital Holdings, Inc. Motion/Concurrence for Summary Judgment [to Dismiss] Under Fed.R.Civ.P. 9(b) and 12(b)(6). Defendant Smith Barney filed a Reply Brief in Support of Defendant Smith Barney's Fed.R.Civ.P. 9(b) and 12(b)(6) Motion to Dismiss and Request to Strike Plaintiffs' Defective

Response Brief on February 18, 2005.

**II.     STATEMENT OF FACTS**

Sometime prior to July 31, 2003, Defendant Darrin C. Eaton contacted Plaintiff Abdullah Muhammad. (Compl ¶ 19). Defendant Eaton presented to Plaintiff Abdullah Muhammad a proposal to have the Plaintiffs invest in a condominium conversion project, located at 1235-1239 West Sixth Street in Cleveland, Ohio (also known as "the Hat Factory"). (*Id.* ¶ 20). On July 31, 2003, Defendant Eaton sent the Plaintiffs copies of an Executive Summary and "Performa" for the Hat Factory, which offered an investment to the Plaintiffs. (Pl.'s Ex. 2 and 3).

After discussion between the Plaintiffs and Defendants Eaton and Anthony Jerdine, it was agreed that the Plaintiffs would lend Defendant 1235 White Cort $400,000.00. Defendants Eaton and Jerdine first attempted to persuade the Plaintiffs to pay $400,000.00 into 1235 White Cort as a capital contribution, which was refused by the Plaintiffs. The Plaintiffs agreed to loan the money to Defendant 1235 White Cort by sending to an account in the name of 1235 White Cort, by wire transfer after extensive negotiations, and offers of guarantee by Defendant Eaton, secured by marketable securities. (Pl.'s Ex. 6).

The Plaintiffs, however, would not provide the loan without a personal guarantee, and without having the funds placed in an escrow account. In response, Defendant Bruce Illes wrote the Plaintiff's representative on August 11, 2003, stating that there could not be an escrow account because the funds had to be sent by wire transfer to Defendant Wolfe and Turner as a commitment fee. (Pl.'s Ex. 6). Defendant Illes further promised that the commitment fee was refundable if the deal for the financing of the Hat Factory did not close. (Pl.'s Ex. 7).

Since the Plaintiffs still had some concerns about proceeding with the loan, on August 13,

3

2003, Defendant Illes sent to Plaintiffs' counsel an email stating, "My client has a solution that will reduce that risk to almost nothing. Darrin Eaton has agreed to use his brokerage account, with a value exceeding $400,000, to secure the investment of MDG in 1235 White Cort." (Pl.'s Ex. 9). On August 12, 2003, Defendants Eaton and Jerdine discussed with Plaintiff Abdullah Muhammad regarding this arrangement of having Defendant Eaton use the brokerage account (which is now alleged to be fraudulent) with Smith Barney as collateral for the loan. On August 18, 2003 Defendant Chasten, on behalf of Defendant Smith Barney, signed the Control Agreement. (Pl.'s Ex. 14). Plaintiffs then agreed to make the loan. In reliance on the Defendants' representations to the Plaintiffs, the Plaintiffs sent the $400,000.00 by wire transfer to:

> Chase Manhattan Bank, New York City
> ABA # 02100021
> **F.B.O. Smith Barney**
> Account Number: 066-198038
> Further Credit To: 1235 White Court, Acct# 224-094557-12-303

(Pl.'s Ex. 19-21). This wire transfer information was provided to the Plaintiffs by Defendant Illes through an email dated August 21, 2003. (Pl.'s Ex. 22). Once the funds were transferred, the Defendants began avoiding the Plaintiffs. Accordingly, on January 30, 2004, the Plaintiffs advised Defendants Chasten and Smith Barney of Defendant Eaton's default under the obligations defined in the Control Agreement, and that the Plaintiffs could no longer accept Entitlement Orders from Eaton. (Pl.'s Ex. 26).

Plaintiffs then filed the current action alleging: Violations of 18 U.S.C. §§ 1961, 1962 (Count I); Breach of Promissory Note (Count II); Breach of Guaranty (Count III); Breach of Security Agreement (Count IV); Fraudulent Misrepresentation (Count V); Negligent Misrepresentation (Count VI); and Silent Fraud (Count VII). Defendant Eaton filed a Cross-Claim against his Co-

Defendants alleging Fraudulent Misrepresentation (Count I) and Negligent Misrepresentation (Count II).

**III.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). A court takes the factual allegations in the Complaint as true when evaluating the propriety of dismissal under Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001); *Hoeberling v. Nolan*, 49 F. Supp.2d 575, 577 (E.D. Mich. 1999). Further, the court construes the complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).

Rule 9(b) of the Rules of Civil Procedure provides that allegations of fraud must be stated with particularity. Fed. R. Civ. P. 9(b).

**IV.     APPLICABLE LAW & ANALYSIS**

Plaintiffs assert in Count I of the Complaint that the Defendants violated 18 U.S.C. § 1962(c) (Racketeer Influenced and Corrupt Organizations, "RICO"). A plaintiff who asserts a civil action under 18 U.S.C. § 1962(c) must show that the defendants have engaged in "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). A RICO enterprise is defined as "any individual, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

### A.     Conduct

The United States Supreme Court held that "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179.  To prove conduct, for purposes of RICO, "*some* part in directing the enterprise's affairs is required." *Id*. (Emphasis in original).  The Court further held that a defendant is not liable under RICO unless he or she has "participated in the operation or management of the enterprise itself." *Id.* at 183.

In examining the Complaint in the light most favorable to the Plaintiffs, the Court finds that the conduct element required in RICO claims has been met, as to Defendants Smith Barney, Illes and Eaton.  The Court finds that the Plaintiffs have alleged sufficient facts in their Complaint that Defendants Smith Barney, Illes, and Eaton did participate in, operate or manage the alleged fraudulent scheme.  The Complaint states that the Plaintiffs sent $400,000 by wire transfer F.B.O. Smith Barney.  (Compl. ¶ 44).  The Complaint further asserts that Defendant Smith Barney, upon receiving the $400,000 by wire transfer immediately distributed the account by wire transfer to Defendants Wolfe & Turner Investments, Inc., 1235 White Cort, L.L.C., Eaton and Illes.  (*Id.* ¶ 45).  As to Defendant Illes, the Complaint alleges that Defendant Illes made several misrepresentations to the Plaintiffs, (*Id.* ¶¶ 28, 29, 30, 35, 40-41), and received $4,900 from the disbursement of funds (*Id.* ¶ 44).  Regarding Defendant Eaton, the Complaint asserts that Defendant Eaton presented the proposal to the Plaintiffs, (*Id.* ¶20), made several misrepresentations, (*Id.* ¶¶ 24, 31, 32-33, 35, 39, 42, 51 and 53), and received $15,000 from the distribution of the funds (*Id.* ¶ 44).

With respect to Defendant Oracle Capital Holdings, Inc., because Defendant Eaton was the registered agent and Managing Director of Defendant Oracle Capital Holdings, Inc., Defendant

Oracle Capital Holdings, Inc. may have been involved through Defendant Eaton.

The Court finds that Plaintiffs have sufficiently stated the first prong of the RICO statute with respect to Defendants Smith Barney, Illes, Eaton and Oracle Capital Holdings.

**B.     Enterprise**

The enterprise element must be shown "by evidence of an ongoing organization, formal or informal, and by evidence that the various associations function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 584 (1981). Such continuity of structure exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc basis. *United States v. Tocco*, 200 F.3d 401, 425 (6th Cir. 2000)(quoting *United States v. Kragness*, 830 F.2d 842, 856 (8th Cir. 1987)). A plaintiff must "show an ascertainable structure distinct from any structure inherent in the conduct of a pattern of racketeering activity." *Tocco*, 200 F.3d at 425. An enterprise is a separate and distinct entity from the person or named defendants. *Durant v. Servicemaster Co.*, 159 F.Supp.2d 977, 981 (E.D.Mich. 2001)("A RICO enterprise 'cannot merely consist of the named defendants.'")(quotation omitted).

The Court finds that Plaintiffs have not met the second prong of 18 U.S.C. § 1962(c). Under *Turkette*, an enterprise must involve an ongoing organization that functions as a continuing unit. *Turkette*, 452 U.S. at 584. However, this case involves a single transaction, the investment and deposit of $400,000.00 by the Plaintiffs. There is on evidence of a ongoing organization that functions as a continuing unit. Rather, the actions of the Defendants appear to be one solitary transaction. As a result, the second prong of 18 U.S.C. § 1962(c) must fail in this case.

Furthermore, the enterprise mentioned in the Complaint is 1235 White Cort, L.L.C. (Compl. ¶ 59). However, 1235 White Cort, L.L.C. is also one of the named defendants in this action.

(Compl. at 2). According to *Durant*, an enterprise for RICO purposes, must be a separate and distinct entity from the named defendants. *Durant*, 159 F.Supp.2d at 981. As a result, the Plaintiffs have not met the second prong required in RICO actions.

### C. Through a Pattern

A plaintiff, in order to prove a pattern of racketeering activity under RICO, must show at least two related racketeering predicates and that these predicates amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Company*, 492 U.S. 229, 239 (1989). The relationship requirement is satisfied where the predicates "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. Citing 18 U.S.C. § 3575(e). *See also U.S. v. Blandford*, 33 F.3d 685, 703 (6th Cir. 1994). Regarding the continuity element the Court held:

> A party alleging a RICO violation may demonstrate a continuity over a closed period by providing a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

*Id.* at 242.

The Sixth Circuit Court of Appeals held in *American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352 (6th Cir. 1990), that acts of mail fraud over a six month period, without the threat of continuing criminal activity, did not establish a pattern of racketeering activity. The Sixth Circuit Court of Appeals further held that the acts of the defendants in *American Eagle* presented "the kind of 'very short period[ ] of criminal activity' which [is] insufficient to state a pattern under *H.J.*."

*Id.* An allegation does not constitute a "pattern" for purposes of RICO where there was only a general, short-term scheme, multiple victims, a single injury and no threatened repeated harm or injury. *See Thompson v. Paasche*, 950 F.2d 306, 310-311 (6th Cir. 1991); *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 54 (3d Cir. 1988); *Jones v. Lampe*, 845 F.2d 755 (7th Cir. 1988).

The Court finds that the pattern prong of RICO has not been met. While the Plaintiffs have sufficiently shown that the predicates are related, as they have the same victims, they have not shown that the continuity element has been met. The Plaintiffs do not allege continued criminal activity nor the threat of continued criminal activity. The scheme involved the single transaction of obtaining $400,000.00 from the Plaintiffs. Furthermore the entire scheme lasted approximately eight months. Although the time period may be sufficient, there is no showing of a threat of continued criminal activity. The Court finds that the Plaintiffs have not pled sufficient facts in their Complaint to meet the pattern requirement of 18 U.S.C. § 1962(c).

### D.    Racketeering Activity

The RICO statute delineates which crimes can constitute "racketeering activity," as required in a RICO claim. 18 U.S.C. § 1961(1). Among the identified crimes are mail fraud and wire fraud, both of which are alleged in the present action.

Mail fraud consists of two elements: (1) a scheme or artifice to defraud and (2) mailing used for the purpose of executing the scheme. *Bender v. Southland Corp.*, 749 F.2d 1205, 1215-1216 (6th Cir. 1984). Wire fraud consists of three elements: (1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property. *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003); citing *United States v. Prince*, 214 F.3d 740, 747 - 748 (6th Cir. 2000).

The scheme to defraud must involve, "intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal rights, and which accomplishes the end designed. [A scheme to defraud] requires intent to deceive or defraud." *Bender*, 749 F.2d at 1215-1216 (emphasis omitted), citing *Epstein v. United States*, 174 F.2d 754, 765 (6th Cir. 1949). The scheme to defraud "includes any plan or course of action by which someone intends to deprive another by deception of money... or property by means of false or fraudulent pretenses, representations, or promises." *Daniel*, 329 F.3d at 485, citing *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 479 (6th Cir. 1999).

The Court finds that the Plaintiffs have met the fourth required element of a RICO claim, racketeering activity. The Complaint alleges that the Defendants committed wire and mail fraud. (Compl. ¶ 58). The Plaintiffs have shown that the Defendants used the mail or wire, (*Id.* ¶¶ 21, 25, 28, 29, 33-35, 38-40, and 42-44), had a common scheme (as discussed above), and had the intent to defraud (*Id.* ¶¶ 27, 46, and 50).

Because Plaintiffs have failed to allege all the necessary elements to show a RICO claim, the Court finds that the Plaintiffs have failed to state a claim upon which relief can be brought, based on 18 U.S.C. § 1962(c). Plaintiffs' RICO claim under 18 U.S.C. § 1962(c), Count I, must be dismissed.

    **E.**    **RICO Conspiracy Claim**

Plaintiffs also allege that the Defendants violated 18 U.S.C. § 1962(d), which provides that it is unlawful for a person to conspire to violate the other provisions of the statute. In order to prove a violation of 18 U.S.C. § 1962(d) the existence of an "illicit agreement to violate the substantive RICO provision" must be shown. *United States v. Sinito*, 723 F.3d 1250, 1260 (6th Cir. 1983). As

the Plaintiffs have not adequately pled a violation of one of the other provisions of the RICO statute, the Court finds the Plaintiffs have failed to state claim upon which relief could be granted under the RICO conspiracy claim in 18 U.S.C. § 1962(d).

## V.    REMAINING STATE LAW CLAIMS

As the Court has dismissed the Plaintiff's RICO claim pursuant to Fed.R.Civ.P. 12(b)(6), and because Plaintiffs cannot show complete diversity jurisdiction, the Court dismisses the Plaintiffs' remaining state law claims in Counts II through VII and Defendant Eaton's Cross-Claim. Under 28 U.S.C. § 1332(a)(1), federal district courts have jurisdiction in claims where the amount in controversy exceeds $75,000 where the parties are citizens of different states. Here, Plaintiff Abdullah Muhammad resides in Michigan. Plaintiff Muhammad Development Group, Inc. is organized and exists, and has its primary place of business in Michigan. Defendants Eaton and Jerdine reside in Michigan. Defendant Oracle Capital Holdings, Inc. exists and operates, and has its primary place of business in Michigan. Since many of the Defendants are citizens of Michigan, as well as the Plaintiffs, this Court lacks jurisdiction over the remaining state law claims.

Federal courts may have jurisdiction over non-federal claims, as provided by 28 U.S.C. § 1367. Section 1367 provides:

> (a) Except as provided in subsection (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all the other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>                                                          * * *
> (c) The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -

> (1) the claim raises a novel or complex issue of State law;
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>
> (3) the district court has dismissed all claims over which it has original jurisdiction; or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The "same case or controversy" is established if the claims arise out of a common nucleus of operative facts such that one would expect them to be tried in one proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). The court can, in its discretion, remand matters not within its original jurisdiction. 28 U.S.C. §1441(c).

"It has long been understood that if the federal claims that are the basis for jurisdiction are eliminated from the case, the federal court has discretion whether to exercise pendent jurisdiction over the remaining state-law claims or to decline to exercise that jurisdiction." *13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction, 3567.1 (2d ed. Supp. 2001) (footnote omitted)*. "The Sixth Circuit holds that generally, if the federal claims are dismissed before trial, the state claims should be dismissed as well." *Barber v. Pepsi-Cola Personnel, Inc.*, 78 F. Supp. 2d 683, 695 (W.D. Mich. 1999) (citing *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *Landefeld v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).

Pursuant to the cases cited above, this Court dismisses, the remaining state law claims, Counts II through VII of Plaintiffs' Complaint and Defendant Eaton's Cross-Claim.

VI.   **CONCLUSION**

For the foregoing reasons, this Court GRANTS Defendant Smith Barney's Fed.R.Civ.P. 9(b) and 12(b)(6) Motion to Dismiss; Defendant/Cross Defendant Bruce H. Illes' Motion for Summary Judgment and Concurrence/Response to Smith Barney's Motion for Summary Judgment; Defendant Darrin C. Eaton's Motion/Concurrence for Summary Judgment Under Fed.R.Civ.P. 9(b) and 12(b)(6) and Response to Smith Barney and Bruce Illes Motions For Summary Judgment; and Defendant/Cross Defendant Oracle Capital Holdings, Inc.'s Motion for Summary Judgment And Concurrence/Response to Smith Barney's Motion for Summary Judgment.

Accordingly,

IT IS ORDERED that Defendant Smith Barney's Fed.R.Civ.P. 9(b) and 12(b)(6) Motion to Dismiss **[Docket No. 30, filed November 22, 2004]** is GRANTED.

IT IS FURTHER ORDERED that Defendant Bruce H. Illes' Motion for Summary Judgment and Concurrence/Response to Smith Barney's Motion for Summary Judgment **[Docket No. 43 and Docket No. 44, filed December 13, 2004]** is GRANTED.

IT IS FURTHER ORDERED that Defendant Darrin C. Eaton's Motion/Concurrence for Summary Judgment Under Fed.R.Civ.P. 9(b) and 12(b)(6) And Response to Smith Barney and Bruce Illes' Motions for Summary Judgment **[Docket No. 50, filed January 3, 2005]** is GRANTED.

IT IS FURTHER ORDERED that Defendant Oracle Capital Holdings, Inc.'s Motion/Concurrence for Summary Judgment Under Fed.R.Civ.P. 9(b) and 12(b)(6) and Response to Smith Barney and Bruce Illes' Motion for Summary Judgment **[Docket No. 51, filed January 3, 2005]** is GRANTED.

IT IS FURTHER ORDERED the RICO claim, Count I, is DISMISSED with prejudice.

IT IS FURTHER ORDERED that the remaining state law claims in Plaintiffs' Complaint, Counts II through VII, and Defendant Eaton's Cross-Claim are DISMISSED without prejudice.


 s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED: October 11, 2005